UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHARON KIRKLAND, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:10-CV-2865 |
| | § | |
| MIKE MARTIN, *et al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Pending before the Court are Defendants Mike Martin and Maloney, Martin, & Mitchell, LLP's motion for partial summary judgment (Doc. 76) and motion for summary judgment (Doc. 79) and Plaintiff Sharon Kirkland's[1] motion for partial summary judgment (Doc. 77). In their motions, Defendants contend that Texas law controls Kirkland's claims against them, that Kirkland has impermissibly "fractured" her legal malpractice claim in order to avail herself of longer limitations periods than otherwise would be applicable, that her claim for intentional infliction of emotional distress cannot stand when she is protected by other means of redress, that the applicable statutes of limitations bar Kirkland's claims against them, and that Kirkland's claims are foreclosed by either claim or issue preclusion, or both. *See* Docs. 77, 79.

Kirkland has filed, in addition to her responses to Defendants' motions, a motion for partial summary judgment on her claims of negligence and legal malpractice. In that motion, Kirkland contends that there is no genuine dispute of material fact regarding Martin's purportedly unlawful conduct and that she therefore is entitled to judgment as a matter of law on these claims. Doc. 77.

After considering the motions, the facts of this case, and the applicable law, the Court

---

[1] The Court variously refers to "Plaintiff" or "Sharon Kirkland" to ensure clarity.

finds that Kirkland's claims are barred by the applicable statutes of limitations and therefore grants Defendants' motion for summary judgment.

Background

This malpractice suit has a rather long and convoluted history. Sadly, it arises out the illness and death of Plaintiff Sharon Kirkland's husband, Clark Kirkland, allegedly as a result of silicosis contracted from his use of Ingersoll-Rand equipment. Doc. 77 at 1-2. Unfortunately, neither of the parties have successfully elucidated the underlying facts, nor has either party buttressed their arguments with consistent reference to summary judgment evidence. As best the Court can tell, the underlying facts are as follows.

In late 2002, Clark Kirkland signed a fee agreement with Defendant Mike Martin, an attorney. Doc. 79-5 at 7. Plaintiff alleges that on April 11, 2003, through Defendant Martin, Clark Kirkland filed a suit against Ingersoll-Rand in Muscogee County, Georgia. Doc. 77 at 1. The parties agree that Martin filed claims on behalf of Mr. Kirkland and derivative claims for loss of consortium on behalf of Plaintiff Sharon Kirkland. Docs. 77 at 2, 76 at 2. Plaintiff alleges that she had no agreement with Defendant Martin and that he filed the claims in her name without her consent. Doc. 77 at 2. Plaintiff additionally alleges that "Martin was not licensed to practice in Georgia and had not sought the court's permission to file the suit in Muscogee County, Georgia, by first retaining local counsel." *Id.* Defendants do not appear to dispute this fact.

Plaintiff further alleges that the Georgia court "informed Martin that he needed either to dismiss the lawsuit or face criminal penalties for the unauthorized practice of law," in response to which Martin dismissed the case without conferring with or informing Clark or Sharon Kirkland. *Id.* Plaintiff goes on to allege that her husband only discovered the dismissal from the

judge presiding in that suit eight months after the dismissal, that she was unaware that the claim had been dismissed, and that she did not, at that time, learn that she had been named as a plaintiff in the action. *Id.* Thereafter, Clark Kirkland "continuously attempted to communicate with Martin regarding the status of his case and questioned Martin as to whether he missed the statute of limitations" for the action in Georgia. *Id.* Plaintiff alleges that "Martin finally confessed his concealment . . . and suggested ways of compensating for [potentially missing the limitations period], including, but not limited to, suggesting that Mr. Kirkland lie about when he knew he had silicosis." *Id.*

In January 2004, Martin hired Scott Monge, a Georgia attorney, to act as local counsel and filed a second action against Ingersoll-Rand and numerous other defendants in Fulton County, Georgia, and again asserted claims on behalf of both Clark and Sharon Kirkland. *Id.* at 3. Plaintiff alleges that Martin filed this second action "without Mr. Kirkland's knowledge and, again, without Plaintiff's knowledge, consent, or agreement." *Id.* On July 23, 2004, the defendants removed that case to the Federal District Court for the Northern District of Georgia where it was assigned to Judge Thomas Thrash, Jr. *See* Doc. 1 in *Kirkland, et al. v. 3M Company, et al.*, No. 1:04-cv-2152-TCB (N.D. Ga. July 23, 2004). In October of that year, the Judicial Panel on Multidistrict Litigation transferred that case to the Southern District of Texas and assigned it to Judge Janis Graham Jack for consolidation with related silica products liability cases. *See* Doc. 14 in *Kirkland v. 3M*, No. 1:04-cv-2152-TCB; *In re Silica Prods. Liab. Litig.*, No. 2:03-md-1553 (S.D. Tex.).

On December 17, 2004, Clark Kirkland wrote to Judge Jack to inform her that Martin had "notified [him] that he was withdrawing from [Kirkland's] case and that he would be filing with this Court for him to be released" as Kirkland's attorney. Doc. 1498 at 1 in No. 2:03-md-1553.

On January 31, 2005, Clark Kirkland filed a notice on his own and Sharon Kirkland's behalf objecting to Scott Monge and Mike Martin's motion to withdraw as counsel. Doc. 1551 in *id.* On January 31, Judge Jack ordered Clark Kirkland, Scott Monge, and Mike Martin to appear in person for a court-monitored deposition of Kirkland regarding his allegations as to Monge and Martin's conduct. Doc. 1557 in *id.* The court held that hearing on February 16 in the Corpus Christi Federal Courthouse.Doc. 1676 in *id.*

On January 26, 2005, the District Court for the Northern District of Georgia granted Scott Monge's motion to withdraw as attorney for the Kirklands. Doc. 16 in No. 1:04-cv-2152-TCB. On August 22, Clark Kirkland filed a "notice of ascertion [sic] of rights and request to be notified" with the Northern District of Georgia, alleging that "Plaintiffs notified both the U.S. District Court in Georgia and Texas of severe misconduct by attorney Michael Martin." Doc. 17 in *id.* On September 30, Judge Thrash ordered the plaintiffs to notify the clerk within twenty days whether they wished to obtain substitute counsel or proceed pro se. Doc. 22 in *id.*

On October 18, the Judicial Panel on Multidistrict Litigation conditionally remanded *Kirkland v. 3M* to the Northern District of Georgia. *See* Doc. 25 in *id*.

On November 2, Clark and Sharon Kirkland submitted a letter to the court stating that they had "been placed in this position [of no longer having counsel] because of negligence, misconduct, and malpractice by Attorneys Mike Martin and Scott Monge" and stating their intention to proceed pro se. Doc. 30 in *id.* The letter was signed by Clark and Sharon Kirkland. Nevertheless, on November 8, Judge Thrash struck the Kirklands' letter for failure to comply with Rule 5(a) of the Federal Rules of Civil Procedure and dismissed the action without prejudice. Doc. 34 in *id.* In response to a subsequent letter informing the court of their difficulties in obtaining counsel and responding to the court's order (Doc. 39 in *id.*), Judge

Thrash subsequently granted a motion for reconsideration and vacated the order of dismissal. Doc. 49 in *id.* On April 3, 2006, the case was reassigned to Judge Timothy C. Batten, Sr. Doc. 58 in *id.*

On May 26, 2006, Judge Batten granted Defendants' motion for summary judgment as to Clark Kirkland's claims on the grounds that they were barred by the applicable Georgia statutes of limitations, but found that Sharon Kirkland's loss of consortium claim was governed by a longer statute of limitations and was not time-barred. Doc. 73 in *id.*[2] On August 16, Ingersoll Rand informed the court that it had reached a settlement with Sharon Kirkland (Doc. 88) and the case was administratively closed. Doc. 89 in *id*.

Clark Kirkland subsequently filed a malpractice suit against Defendants Martin and Maloney, Martin, & Mitchell, LLP in the 113th Judicial District of Harris County. Doc. 77 at 5. *See Kirkland, et al. v. Martin, et al.*, No. 2006-56213. Clark Kirkland passed away on May 29, 2009, after which Plaintiff continued the suit as the representative of Clark Kirkland's estate. *See* Doc. 79-2 at 2. The parties appear to agree that "[t]he jury returned a verdict for the Estate [of Clark Kirkland] and the trial court signed a final judgment awarding the Estate damages in the amount of $150,000. Neither side appealed." Doc. 77 at 5. *See also* Doc. 79 at 23.

On August 20, 2009, Sharon Kirkland filed this action on her own behalf in the Federal District Court for the District of South Carolina against Defendants Mike Martin and Maloney, Martin, & Mitchell, LLP. Doc. 1. On August 10, 2010, Judge Henry Floyd transferred Plaintiff's claims for negligence, breach of fiduciary duty, fraud, negligent misrepresentation, legal malpractice, and outrage to this Court pursuant to 28 U.S.C. § 1406(a) and her wrongful death claim pursuant to 28 U.S.C. § 1404(a). Doc. 34. The parties have since moved for summary

---

[2] Kirkland asserts that this "was the first time Plaintiff was made aware that Defendants had filed a claim on her behalf." Doc. 91 at 5.

judgment and those motions are ripe for adjudication.

### Legal Standard

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

The substantive law governing the suit identifies the essential elements of the claims at issue, and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine dispute of material fact." *Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887, 899 (5th Cir. 2012). If the moving party fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). Moreover, if the party moving for summary judgment bears the burden of proof on an issue, either as a plaintiff or as a defendant asserting an affirmative defense, then that party must establish that no dispute of material fact exists regarding all of the essential elements of the claim or defense to warrant judgment in his favor. *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986) (the movant with the burden of proof "must establish beyond peradventure *all* the essential elements of the claim or defense to warrant judgment in his favor") (emphasis in original).

Once the movant meets its burden, the non-movant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 323–24. The non-moving party "must do more than simply show that

there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Instead, the non-moving party must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006). To do so, the non-movant must "go beyond the pleadings and by its own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is genuine issue for trial." *Webb v. Cardiothracic Surgery Assoc. of N. Tex., P.A.*, 139 F.3d 532, 536 (5th Cir. 1998).

Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Tex. Dep't of Mental Health and Mental Retardation*, 102 F.3d 137, 139–40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (1992), *cert. denied*, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075). The non-movant cannot discharge his burden by offering vague allegations and legal conclusions. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Nor is the court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

Nevertheless, all reasonable inferences must be drawn in favor of the nonmoving party. *Matsushita*, 475 U.S. at 587–88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable*

*Co.*, 336 F.3d 410, 412 (5th Cir. 2003). Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine disputes of fact extant in the summary judgment evidence produced by the moving party. *Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 198–200 (5th Cir. 1988). There is a "genuine" dispute of material fact if the evidence "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

<u>Analysis</u>

In her first amended complaint, filed in this Court after the case was transferred from South Carolina, Plaintiff asserts claims for negligence, breach of fiduciary duty, fraud, negligent misrepresentation, wrongful death, legal malpractice, tort of outrage, and, "[i]f the Court were to conclude that Texas law applies" to Plaintiff's action, "an additional cause of action under the Texas Deceptive Trade Practices Act." Doc. 51 at 26. Plaintiff since has conceded that the "limitations ran on her wrongful-death claim before Mr. Kirkland died" and her claim for wrongful death therefore is barred. Doc. 91 at 13.

The parties disagree whether South Carolina or Texas law governs Plaintiff's claims. Both parties assert, however, that, subsequent to the transfer, the Court should apply Texas choice of law rules to determine the applicable substantive law.[3] "Texas uses the Restatement's 'most significant relationship' test to decide choice-of-law issues." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000) (citing *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 204 (Tex. 2000)). *See also* Restatement (Second) of Conflict of Laws §§ 6, 145 (1971). Under that test, "[t]he rights and liabilities of the parties with respect to an issue in tort are determined

---

[3] 14D Charles Alan Wright et al., Fed. Prac. & Proc. § 3827 (2012) ("[T]he transferee court should apply whatever law it would have applied had the action been properly commenced there."). *See Jackson v. W. Telemarketing Corp. Outbound*, 245 F.3d 518, 523 (5th Cir. 2001) (citing *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1141 (5th Cir. 1992)).

by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties." Restatement § 145(1). The Restatement directs courts, when determining the most significant relationship to consider "the place where the injury occurred, . . . the place where the conduct causing the injury occurred, . . . the domicil, residence, nationality, place of incorporation and place of business of the parties, . . . and the place where the relationship, if any, between the parties is centered." *Id.* § 145(2)(a)-(d).

In their motion for summary judgment, Defendants contend that Texas law applies solely because the case was transferred to this Court pursuant to 28 U.S.C. § 1406(a). Defendants supplemented this sparse reasoning in a subsequent submission in which they argue that the alleged injury in this case occurred in South Carolina, but the conduct causing the injury occurred in Texas, "where the alleged malpractice occurred," and the relationship was centered in Texas. Doc. 92 at 9. Plaintiff, for her part, asserts that "Defendants have presented no summary-judgment evidence on any of these factors, and they have not attempted to argue how the respective policies of South Carolina and Texas might impact the Court's choice-of-law decision." Doc. 91 at 9. Plaintiff presents no further argument nor evidence why South Carolina law, rather than Texas law, should apply to her claims.

Neither the Plaintiff nor the Defendants have presented a particularly compelling argument. Nevertheless, resolution of the choice of law issue is unnecessary to the summary judgment motions because Plaintiff's claims would be time-barred whether South Carolina or Texas law applies.

Under South Carolina law, Plaintiff's claims for negligence, legal malpractice, negligent misrepresentation, the tort of outrage, breach of fiduciary duty, and fraud would be governed by a three-year limitations period. S.C. Code Ann. § 15-3-530 (Supp. 2003). Under Texas law,

9 / 14

Plaintiff's claims for negligence, legal malpractice, and negligent misrepresentation would be governed by a two year statute of limitations. Tex. Civ. Prac. & Rem. Code § 16.003(a) (Vernon 2002). Plaintiff's claims for fraud and breach of fiduciary duty would be governed by a four year limitations period. Tex. Civ. Prac. and Rem. Code § 16.004(4)-(5). Defendants assert that, under Texas law, Plaintiff's claim for the South Carolina tort of outrage would be considered a claim for intentional infliction of emotional distress, governed by the same two-year limitations period. Doc. 79 n.4. *See* Tex. Civ. Prac. & Rem. Code § 16.003. Plaintiff has not responded to this argument except to assert that her claims should be governed by South Carolina law. Doc. 79 at 11. Finally, Plaintiff has asserted a claim under the Texas Deceptive Trade Practices Act ("DPTA") conditional on the Court finding that Texas law applies to her case. DTPA claims are subject to a two-year statute of limitations. Tex. Bus. & Com. Code § 17.565 (Vernon 2011).

In South Carolina, Plaintiff's claims accrued when she "knew or by the exercise of reasonable diligence should have known [s]he had a cause of action." S.C. Code Ann. § 15-3-535 (Supp. 2003).

In Texas, "[a] cause of action for legal malpractice accrues when the client sustains a legal injury or, in cases governed by the discovery rule, when the client discovers or should have discovered the facts establishing the elements of a cause of action." *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 156 (Tex. 1991). The discovery rule applies when: (1) the nature of the injury is inherently undiscoverable; and (2) evidence of the injury is objectively verifiable. *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citing *Computer Assocs. Int'l., Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996)).

Here, the discovery rule applies to Plaintiff's claims under the DTPA and for negligence, fraud, breach of fiduciary duty. *See El Paso Assocs., Ltd. v. J.R. Thurman & Co.*, 786 S.W.2d 17,

20 (Tex. App.–El Paso 1990, no writ) (for breach of fiduciary duty and negligence, claims run from the time the tort was discovered or could have been discovered in the exercise of reasonable diligence); *Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 517 (Tex. 1988) (for common-law fraud, limitations period runs from the time the fraud was perpetrated, or if the fraud has been concealed, from the time it was discovered or could have been discovered by exercise of reasonable diligence); Tex. Bus. & Com. Code § 17.565 ("All actions brought under this subchapter must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice.").

In Texas, malpractice claims additionally are subject to the *Hughes* rule of equitable tolling. "[W]hen an attorney commits malpractice while providing legal services in the prosecution or defense of a claim which results in litigation, the legal injury and discovery rules can force the client into adopting inherently inconsistent litigation postures in the underlying case and in the malpractice case." *Hughes*, 821 S.W.2d at 156. In such cases "the statute of limitations on the malpractice claim against the attorney is tolled until all appeals on the underlying claim are exhausted." *Id.* at 157. Although South Carolina's statute of limitations contains the statutory equivalent of a discovery rule, the courts there have "decline[d] to adopt the continuous representation rule" for malpractice claims. *Epstein v. Brown*, 610 S.E.2d 816, 820 (S.C. 2005) (citing S.C. Code Ann. § 15-3-535 (Supp. 2003)).

The statute of limitations on almost all of Plaintiff's claims under both South Carolina and Texas law therefore began running when Plaintiff knew or should have known, with the exercise of reasonable diligence, of her legal injuries and, to the extent she states a claim for

legal malpractice under Texas law, when the appeals on her underlying claims were exhausted.[4] Defendants provide a scattershot account of various dates on which Plaintiff knew or should have known of her claims against Defendants, and a variety of legal theories to support the imputation of her husband's knowledge to her. The Court finds the matter rather clear. Taking Plaintiff at her word that she initially was unaware that Martin filed the underlying silicosis in her name, as well as her husband's, she nonetheless admits that "May 2006," when Judge Batten in the Northern District of Georgia granted summary judgment against her husband in that action, "was the first time Plaintiff was made aware that Defendants had filed a claim on her behalf." Doc. 91 at 5. *See also* Doc. 73 in No. 1:04-cv-2152-TCB. Plaintiff thus became aware no later than May 2006, more than three years before she filed this action on August 20, 2009 that Defendants had fraudulently filed a claim on her behalf and, without her cooperation or input, pursued that claim in state and federal court in Georgia and Texas. *See* Doc. 1.

The record is nonetheless replete with summary judgment evidence that Plaintiff was aware of Defendants' actions well before May 2006. On January 31, 2005, in the underlying silicosis litigation consolidated in the Southern District of Texas, Plaintiff's husband submitted a motion to the court from the "*Plaintiffs* in the above captioned matter" in which he objected to Martin's counsel and conduct and accused him of negligence and malpractice. *See* Doc. 1551 in No. 2:03-md-1553 (emphasis added). That same day, Judge Jack ordered Clark Kirkland, Scott Monge, and Mike Martin to appear in person for a court-monitored deposition of Kirkland regarding his allegations as to Monge and Martin's conduct. Doc. 1557 in *id.* On February 16, Clark Kirkland travelled from South Carolina to Corpus Christi to attend that hearing, which related directly to Martin's conduct in the case. Doc. 1676 in *id.* On August 22, Clark Kirkland

---

[4] Plaintiff's claims for negligent misrepresentation and intentional infliction of emotional distress likely are not governed by the discovery rule. Because these claims arose concurrent with her other claims, which are subject to the discovery rule but are nonetheless time-barred, these claims likewise are time-barred.

filed a motion with the Northern District of Georgia in which he asserted that "*Plaintiffs* notified both the U.S. District Court in Georgia and Texas of severe misconduct by attorney Michael Martin." Doc. 17 in No. 1:04-cv-2152-TCB. (emphasis added).

Throughout the litigation, then, Plaintiff's husband clearly was aware that he and his wife were named plaintiffs in his case. He submitted documents attesting to this fact and travelled to Texas to respond to concerns he had about Martin's conduct as their attorney. It is unreasonable to conclude that Plaintiff learned none of these facts from her husband. Additionally, Plaintiff confirmed her knowledge of Martin's conduct in the underlying silicosis litigation on November 2, 2005, when she and her husband submitted a letter to the Northern District of Georgia stating that "*the Plaintiffs contend* that they have been placed in this position [of no longer having counsel] because of negligence, misconduct, and malpractice by Attorneys Mike Martin and Scott Monge" and stating their intention to proceed pro se. Doc. 30 in *id.* (emphasis added). Plaintiff signed that letter. The letter directly contradicts Plaintiff's assertion that she was unaware of Martin's conduct until May 2006.

Because the record before the Court indicates that Sharon Kirkland knew of Defendants' purportedly unlawful conduct throughout the underlying litigation, and because she confirmed that knowledge in a letter in November 2, 2005, it is clear that her claims are barred by limitations. Any claims not subject to equitable tolling are time-barred under both the Texas two- and four-year statutes of limitations and the South Carolina three-year limitations period.

To the extent that Kirkland asserts a claim for malpractice under Texas law, that claim would be subject to the *Hughes* rule of equitable tolling and the statute of limitations would not run "until all appeals on the underlying claim are exhausted." *See Hughes*, 821 S.W.2d at 156, -57. Here, Plaintiff settled her claims against the defendants in the underlying litigation in a

settlement signed on August 29, 2006 and filed with the Northern District of Georgia on September 11 of that year. *See* Docs. 88, 89 in No. 1:04-cv-2152-TCB. Plaintiff filed this action on August 20, 2009, almost three years after the final settlement and well outside of the two-year statute of limitations applicable to a malpractice claim under Texas law. Plaintiff's claims against Defendants for alleged wrongful conduct arising out of the underlying silicosis litigation therefore are time-barred.

Conclusion

For the foregoing reasons, the Court hereby

**ORDERS** that Defendants Mike Martin and Maloney, Martin, & Mitchell, LLP's motion for summary judgment (Doc. 79) is **GRANTED**. Further, the Court

**ORDERS** that Plaintiff Sharon Kirkland's motion for partial summary judgment (Doc. 77) is **DENIED** and that Defendants' motion for partial summary judgment (Doc. 76) is DENIED AS MOOT.

SIGNED at Houston, Texas, this 10th day of September, 2012.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE